UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA PAREDES RUIZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:17-cv-00180-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **INTRODUCTION**

Plaintiff Gloria Paredes Ruiz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, the Court affirms the agency's determination to deny benefits.

///

**FACTS AND PRIOR PROCEEDINGS**

In December 2012, Plaintiff filed her application for supplemental security income. AR 13, 214.[1] Plaintiff alleged that she became disabled due to glaucoma, arthritis, high blood pressure and back pain. AR 250. Plaintiff's application was denied initially and on reconsideration. AR 113-16, 124-30. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Cynthia Floyd held a hearing on June 24, 2015, and issued an order denying benefits on July 31, 2015. AR 15-30, 33-71. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 2-4, 8. This appeal followed.

**Relevant Hearing Testimony**

The ALJ held a hearing on June 24, 2015, in Fresno, California. AR 33-71. Plaintiff appeared in person and was represented by Lars Christensen. Impartial Vocational Expert Judith Najarian also appeared. AR 35.

In response to questioning by the ALJ, Plaintiff testified that she has a suspended driver's license, and she does not usually drive. As to her education, she has a GED and received vocational training for clerical, secretarial work. She currently works as a live-in manager at her apartment complex where she cleans the laundromat, waters the plants and monitors the swimming pool in exchange for rent. In 2000, she worked at Cash America Pawn in Texas as a sales clerk. She stopped working there when she moved to California. AR 39-45.

Plaintiff testified that she cannot work because of mental and physical problems. Her physical problems include bilateral carpal tunnel syndrome, osteoarthritis in her left wrist and back, and scoliosis on her left. She reported that the carpal tunnel prevents her from working with her hands for long periods of time and she experiences daily numbness in her upper extremities. She takes ibuprofen and gabapentin. The ibuprofen helps with swelling. She is afraid to have steroid shots or carpal tunnel release surgery. AR 46-49. She can lift and carry five to ten pounds and has difficulty with handling small objects. AR 50-51.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff also testified that she has diabetic retinopathy and her vision is worsening. Her eyeglasses were last updated two years prior to the hearing. She has a retinal scar in her left eye, which blocks her vision, and the vision in her right eye is blurring. AR 49-50.

When asked about her mental problems, Plaintiff testified that she is taking daily medication for depression and has a therapist. She also experiences anxiety attacks. In the past, her depression had been tied to alcohol, but Plaintiff reported that she last had alcohol five years prior to the hearing. Despite this report, Plaintiff also admitted that she had spent time in jail resulting from an incident in October 2013 and had been drinking alcohol. Plaintiff believed that her mental health program has helped. AR 51-53.

When asked about a typical day, Plaintiff testified that she wakes up around 8:00 or 8:30, takes her medications, drinks coffee, gets dressed and mostly watches television in her bedroom. She reports getting along with her friends and family, but does not get along well with other people. AR 53-55.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE") Judith Najarian. The VE testified that Plaintiff's past work was characterized as sales clerk (light, SVP 3) and day worker (light as performed, SVP 2). The ALJ also asked the VE a series of hypothetical questions. For all of the hypotheticals, the ALJ asked the VE to assume an individual with the same vocational profile as Plaintiff. For the first hypothetical, the ALJ asked the VE to further assume a person that could lift and carry up to 20 pounds occasionally, up to 10 pounds frequently, could stand and walk about six hours, could sit about six hours, frequently could climb, balance, stoop, kneel, crouch, and crawl, could frequently handle and finger, and could perform simple, routine tasks, but had only occasional vision and occasional depth perception. The VE testified that this individual could perform Plaintiff's past day worker position as actually performed. She also could perform other jobs, such as counter attendant, cafeteria attendant and sales attendant. AR 57-62.

For the second hypothetical, the ALJ asked the VE to assume the same residual functional capacity as described in the first hypothetical, but the individual could occasionally finger, feel and handle bilaterally. The VE testified that this would eliminate Plaintiff's past work, but there were other jobs available, such as counter clerk (reduced by five-eighths), page (after 50 percent reduction), and bakery worker, conveyor line (reduced 97 percent). AR 62-65.

For the third hypothetical, the ALJ asked the VE to assume the same residual functional capacity as described in hypothetical number two, but the person was further restricted by working off-task five percent of the workday and could tolerate frequent interaction with the public, coworkers and supervisors. The VE testified that there would not be any work that this person could perform. AR 66.

For the fourth hypothetical, the ALJ asked the VE to assume hypothetical number two with further restrictions to lifting and carrying up to 10 pounds occasionally and up to five pounds frequently. The VE testified that according to the Dictionary of Occupational Titles, this person could perform work as a surveillance monitor. AR 66.

Following the ALJ's questioning, Plaintiff's counsel inquired of the VE. In response, the VE testified that if someone is blind in one eye, then they do not have any depth perception. Plaintiff's counsel then asked the VE to assume, for a fifth hypothetical, the person in hypothetical one with occasional field of vision, but no depth perception. The VE testified that the positions of counter attendant, cafeteria attendant and sales attendant remained the same. AR 67-68.

For a sixth hypothetical, Plaintiff's counsel asked the VE to assume the individual in hypothetical two with occasional finger, handle and feel, but depth perception limited to none. The VE testified that counter clerk and bakery worker, conveyor would be further reduced, but there would be no change to the position of page. AR 68-70.

In response to additional questions from the ALJ, the VE clarified that Plaintiff's past work as a day worker with respect to hypothetical one would be eliminated without depth perception. AR 70.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 13-27. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since December 18, 2012, her application date. Further, the ALJ identified left eye blindness, chorestscachoria retinal scarring of the left eye, bilateral carpal tunnel syndrome and osteoarthritis of the bilateral writs and lower

4

extremities, major depressive disorder (recurrent without psychotic features), and diabetes mellitus with background diabetic retinopathy, moderate bilaterally as severe impairments. AR 16. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 16-18. Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours and stand and/or walk 6 hours in an 8-hour workday, frequently climb, balance, stoop, kneel, crouch, or crawl, frequently handle and finger, and occasionally perform tasks requiring full field of vision and depth perception due to left eye impairment, but was limited to work involving only simple, repetitive tasks. AR 18-25. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that she could perform, such as counter attendant, cafeteria attendant and sales attendant. AR 25-27. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 27.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff identifies two asserted errors: (1) that the VE testified in apparent conflict with the Dictionary of Occupational Titles ("DOT") with respect to the positions of sales attendant and page; and (2) the ALJ failed to explain Plaintiff's degree of manipulative impairment.

**DISCUSSION**[2]

**A. VE Testimony**

Plaintiff first asserts that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT") regarding her ability to work as a sales attendant or as a page. Plaintiff therefore contends that because VE's testimony is in apparent conflict with the DOT, then the Court should strike those occupations. (Doc. No. 13 at pp. 8-9.) The Court notes, however, that the ALJ did not rely on the occupation of page in rendering her decision. Rather, the ALJ found, based on the VE's testimony, that Plaintiff could perform the representative jobs of sales attendant, counter attendant and cafeteria attendant. AR 26.

With respect to the position of sales assistant (DICOT 299.677-010), Plaintiff correctly points out that there is an apparent conflict between her RFC limitation to simple, repetitive work and the demands of Level 3 Reasoning required by this position. *Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (holding "there is an apparent conflict between the residual functional capacity to perform

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

simple, repetitive tasks, and the demands of Level 3 Reasoning"). "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Id.* at 846 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007)). The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a disability determination. *Id.* Here, the ALJ did not ask the expert to explain why a person with Plaintiff's limitation to simple, repetitive tasks could nevertheless meet the demands of Level 3 reasoning. The ALJ's failure to inquire about the conflict is error.

Defendant contends that this error is harmless, noting Plaintiff's ability to perform semi-skilled work for a number of years, her high school education and her college certificate in secretarial work. (Doc. No. 16 at 10.) Defendant's argument is unavailing. Reasoning Level 3 in the context of the sale attendant job means the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* SALES ATTENDANT, DICOT 299.677-010, 1991 WL 672684. According to the record, however, the ALJ gave great weight to the opinion of Dr. Patricia Heldman, the state agency consultant, who found that "with the inability to spell 'world' backward, restricted affect and clinical impression of below average intelligence combined with . . . mild to moderate restrictions," Plaintiff could perform only "simple tasks." AR 17, 25, 102. Dr. Heldman also determined that Plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions. AR 107, 108. Thus, Dr. Heldman apparently set simple tasks as the highest level of Plaintiff's ability. On this record, the Court cannot conclude that substantial evidence supports the ALJ's step-five finding that Plaintiff could perform the work of sales attendant, which requires Reasoning Level 3. *Massachi*, 486 F.3d at 1154.

**B. Manipulative Limitations**

Plaintiff contends that the ALJ also erred by failing to explain the basis for the degree of manipulative limitation identified in the RFC, thereby eliminating the two remaining representative jobs. The Court agrees, but finds any error by the ALJ to be harmless.

An ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). There is no requirement for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question that an RFC finding need not directly correspond to a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with, but not identical to limitations assessed by the physician. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

With respect to manipulative limitations, the ALJ concluded that Plaintiff could frequently handle and finger. AR 18. Notwithstanding this determination, none of the opinion evidence accorded weight by the ALJ is consistent with such a limitation. The consultative examiner, Dr. Vinay Buttan, opined that Plaintiff should be able to work with her hands up to 4 to 5 hours per day and manipulate small tools, instruments, or work on a keyboard. AR 21, 405. However, the ALJ afforded "little weight to Dr. Buttan's opinion regarding [Plaintiff's] ability to work with her hands as other evidence suggests greater limitations." AR 21. Indeed, the ALJ found that Dr. Buttan's medical source statement regarding Plaintiff's exertional capacities "appear[ed] overly optimistic given her carpal tunnel syndrome and lower extremity arthritis." *Id.* Thus, the ALJ rejected the fingering and handling limitations identified by Dr. Buttan because they overstated Plaintiff's abilities.

The only other opinion evidence considered by the ALJ regarding Plaintiff's manipulative limitations was that of Dr. Robert Mitgang, the state agency consultant. The ALJ accorded the greatest weight to opinion of Dr. Mitgang in making the physical RFC assessment. AR 25. However, Dr. Mitgang concluded that Plaintiff's hand and wrist impairments would limit her to occasional use, and she could only occasionally use her bilateral hands for gross and fine manipulation. AR 21, 86, 89-90. Despite assigning great weight to Dr. Mitgang's opinion, which included the limitation to occasional handling and fingering, the ALJ nonetheless reached a conflicting determination that Plaintiff maintained the capacity to frequently handle and finger. AR 18.

Social Security rulings require an ALJ to "consider and address medical source opinions" when assessing a claimant's residual functional capacity ("RFC"). SSR 96-8p, 1996 WL 374184, at *7 (July

2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* Although an ALJ is not required to discuss every piece of medical evidence, the rejection of significant probative evidence must be explained. *Little v. Berryhill,* 708 F. App'x 468, 469 (9th Cir. 2018). Further, "an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Here, the ALJ provided no explanation for failing to incorporate Dr. Mitgang's manipulative limitations in the RFC, despite record evidence that diagnostic studies of the wrists confirmed "advanced osteoarthritis of the navicular trapezium joint" and "milder osteoarthritis first carpometacarpal joints of both wrists," (AR 573), and Plaintiff's motor and sensory nerve conduction study was abnormal with evidence of "severe compression neuropathy (Carpal Tunnel Syndrome) of the median nerves across the wrist B/L that is physiologically more advanced on the right side," (AR 576). Because the ALJ failed to address the manipulative limitations identified by Dr. Mitgang, the ALJ erred.

However, even if the ALJ erred in failing to address Dr. Mitgang's opinion that Plaintiff was limited to only occasional fingering and handling, the Court finds such error is harmless. "[A] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)). A court is precluded from considering an error to be "harmless unless it can confidently conclude that no reasonable ALJ ... could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding an ALJ's failure to consider and comment upon uncontradicted lay testimony was not harmless error). A court may find harmless error where the error was inconsequential to the ultimate disability determination. *Id.* at 1055.

Plaintiff argues that the ALJ's error is not harmless because the two remaining representative occupations identified by the VE and relied upon by the ALJ—counter attendant and cafeteria attendant--were based on a limitation to frequent fingering and handling. (Doc. No. 13 at 11-12.) Although Plaintiff correctly points out that these occupations require frequent handling, Plaintiff's argument regarding prejudicial error is not persuasive. *See* COUNTER ATTENDANT, LUNCHROOM OR COFFEE SHOP, DICOT 311.477-014, 1991 WL 672684; CAFETERIA ATTENDANT, DICOT 311.677-010, 1991 WL 672694. At the hearing, the ALJ posed a hypothetical to the VE that included

the factors she ultimately included in Plaintiff's RFC, as well as that the person would be "further restricted in that they can occasionally finger, feel, and handle bilaterally." AR 62-63. The VE responded that a person with such an RFC would be able to perform the representative occupations of counter clerk (249.366-010) and bakery worker, conveyor line 524.687-022, both with reductions in the number of jobs available in the national economy. AR 63. Given this testimony by the VE, the ultimate determination at step five that there were other jobs in the national economy that Plaintiff could perform, even if limited to occasional use of her bilateral hands for gross and fine manipulation, would remain unaltered. The Court therefore finds that the ALJ's error was harmless to the ultimate disability determination. *Compare Booker v. Berryhill*, No. 16-CV-02299-SK, 2017 WL 2903188, at *5 (N.D. Cal. Apr. 18, 2017) (finding ALJ's failure to include limitation in RFC not harmless where VE testified that there would not be any available jobs).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Gloria Ruiz Paredes.

IT IS SO ORDERED.

Dated: **September 4, 2018**     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE